NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 11a0751n.06

No. 09-5482

FILED

**Nov 07, 2011**

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATE OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JOSHUA TALLEY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: KENNEDY, GIBBONS, and KETHLEDGE, Circuit Judges.

**CORNELIA G. KENNEDY, Circuit Judge.** Joshua Talley pleaded guilty to distribution of five grams or more of cocaine base in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(B). He now appeals his 300-month sentence as procedurally unreasonable because the district court declined to decrease his Guideline offense level for accepting responsibility. For the reasons that follow, we **AFFIRM**.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007, local Hamilton County, Tennessee law enforcement officials and the Federal Bureau of Investigation conducted an investigation into the drug trafficking activity of Joshua Talley. On May 13, 2008, a grand jury sitting in the Eastern District of Tennessee filed a six-count indictment charging Talley with distribution of five grams or more of cocaine base in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(B). On May 14, 2008, Talley was arrested. On July 24, 2008, he pleaded guilty to one count of distribution of five grams or more of cocaine base pursuant to the terms of a written

plea agreement in which the government agreed, in return, to dismiss the remaining counts at sentencing.

After entering his plea and while incarcerated, Talley wrote a letter to an acquaintance and fellow drug dealer named Edgar Williams. In the relevant portions, the letter reads, "KEN MOORE is who wore the wire on me. He use to be with Big Danny, and also Mist, (wolf son). He suppose to be 'Gangster' though. Beat him when you see for me. Lil T suppose to broke in my crib." The letter goes on to say, "[j]ust remember Ken Moore is a snitch." This letter was intercepted before it could reach Williams.

Because of this letter, the probation officer recommended in her Pre-Sentence Report (PSR) that a two-level obstruction-of-justice enhancement be added to Talley's offense level. Additionally, the probation officer recommended that the district court not decrease Talley's offense level for acceptance of responsibility because it is unusual to do so when the defendant has obstructed justice. Ultimately, the PSR recommended a total offense level of 37 because the probation officer found the defendant to be a career offender. Talley, through counsel, objected to the PSR's recommendation that the letter should be considered an obstruction of justice. He also contended that he deserved a reduction for his acceptance of responsibility.

At his sentencing hearing, Talley argued his objections to the PSR. He took the stand to explain the meaning of the letter and said that the phrase "[b]eat him when you see for me" referred to the subject of the next sentence (Lil T). He also explained that the exclusive purpose for mentioning Moore was to warn Williams that Moore might "wear the wire" on him as well. The district court did not find Talley's testimony regarding who should be beaten to be credible and

concluded that Talley's explanation did not make sense given the language and punctuation in the letter. Furthermore, due to the care Talley took to warn Williams that Moore was the person who wore the wire, the court reasoned that Williams was also in the drug-trafficking business. From this understanding, the court found that bringing Moore's status as a confidential informant to the attention of Williams increased the danger that physical harm would befall Moore. Based on these facts, the court determined that the letter to Williams threatened Moore. Upon making this conclusion, the court found Talley obstructed justice. This finding led the court to conclude that Talley had not accepted responsibility for his actions because he obstructed justice.

Subsequently, the court heard Talley's plea for leniency with respect to the career offender enhancement. The court found Talley to be a career offender and calculated his criminal history, offense level, and sentence range accordingly. Despite applying this provision, the court was, to some extent, swayed by his plea, and it determined that a below-Guidelines term of 25 years was appropriate. Talley timely appealed.

## ANALYSIS

Talley argues on appeal that his sentence is procedurally unreasonable because the district court improperly denied him an offense-level reduction for his acceptance of responsibility. We review the district court's sentencing determinations for reasonableness, using a deferential abuse-of-discretion standard. *United States v. Martinez*, 588 F.3d 301, 324 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 56 (2007), *Rita v. United States*, 551 U.S. 338, 361 (2007), and *United States v. Booker*, 543 U.S. 220, 261 (2005)). The procedural component of the reasonableness equation requires that we "'ensure that the district court committed no significant

procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *Id*. (quoting *Gall*, 552 U.S. at 51). The district court's decision "should be sufficiently detailed to reflect the considerations listed in § 3553(a) to permit meaningful appellate review" and "must also provide some indication that the court considered the defendant's arguments in favor of a lower sentence and the basis for rejecting such arguments." *Id.* at 325 (citations and internal quotation marks omitted).

## I. Career Offender

Talley does not appeal the district court's determination that he is a career offender. Once deemed applicable, the career offender enhancement determines the criminal history category and, if its table provides an offense level greater than would otherwise be applicable, the offense level. U.S.S.G. § 4B1.1(b). In light of this provision, the district court determined Talley's criminal history to be Category VI and his offense level to be 37. U.S.S.G. § 4B1.1(b) (requiring an offense-level of 37 if the offense's statutory maximum is life), *and* 21 U.S.C. § 841(b)(1)(B) (2009) (providing a statutory maximum of life). Because Talley does not challenge the application of the career-offender enhancement, his appeal is limited to the district court's acceptance of responsibility determination.

## II. Acceptance of Responsibility

Talley makes three challenges to the district court's refusal to apply an acceptance-of-responsibility reduction to his offense level. U.S.S.G. § 3E1.1(a) permits a district court to reduce

a defendant's sentence if the defendant "clearly demonstrates acceptance of responsibility for his offense." It is the defendant's burden to prove, by a preponderance of the evidence, that the reduction is justified. *United States v. Surratt*, 87 F.3d 814, 821 (6th Cir. 1996). "A defendant who pleads guilty is not entitled to a reduction as a matter of right." *Id*. As the commentary to § 3E1.1 makes clear, although

> [e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 . . . will constitute significant evidence of acceptance of responsibility. . . . However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.

U.S.S.G. § 3E1.1 cmt. n.3. Additionally, Application Note 4 provides that conduct supporting an obstruction-of-justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1 cmt. n.4. Of Talley's challenges, the first focuses on whether his conduct properly falls within Application Note 4 and the next two focus on the aforementioned extraordinary case exception in that note.

A. Obstruction of Justice

Talley concedes that the district court refused to provide an acceptance-of-responsibility reduction because it found that he obstructed justice. Properly characterized, Talley's first argument is that the district court erred when it denied him this reduction because it erred in finding an obstruction of justice. Talley's objection to the obstruction determination calls into question both

the district court's factual findings and its application of the law to those facts. The Guidelines

define obstruction-of-justice as follows:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or
> impede, the administration of justice with respect to the investigation, prosecution,
> or sentencing of the instant offense of conviction, and (B) the obstructive conduct
> related to (i) the defendant's offense of conviction and any relevant conduct; or (ii)
> a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.

Application Note 4 to U.S.S.G. § 3C1.1 provides a non-exhaustive list of the types of conduct

to which the enhancement applies. The note explains that the enhancement is appropriate when a

court finds conduct which constitutes "threatening, intimidating, or otherwise unlawfully influencing

a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1

cmt. n.4(A). The burden is on the government to prove obstruction of justice by a preponderance

of the evidence. *United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002) (citations omitted).

Our method of reviewing a district court's obstruction determination begins by considering

if the district court's factual findings were clearly erroneous. *United States v. Vasquez*, 560 F.3d

461, 473 (6th Cir. 2009). "A factual finding will only be clearly erroneous when, although there may

be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed." *United States v. Galaviz,* 645 F.3d 347, 352 (6th

Cir. 2011) (citation and internal quotation marks omitted). Next, we consider the district court's

application of the Guidelines to the facts and, in this consideration, we give the district court's

determination due deference. *See Buford v. United States*, 532 U.S. 59, 66 (2001) (explaining that

the fact-bound nature of a sentencing decision, the comparative expertise of the District Court in

making this determination, and the limited value of precedent in this situation indicates that a deferential standard of review is appropriate).

Talley challenges the district court's factual finding that the letter Talley sent to Williams was a threat against Moore. The district court made this finding for several reasons. First, the plain language and punctuation of the letter clearly supported this as a more reasonable and correct reading of the letter. In particular, the district court focused on the placement of a period after the phrase "[b]eat him when you see for me" and before the introduction of a new subject. The district court rejected Talley's proffered alternative explanation that the phrase was directed toward Lil T because the period was placed before the introduction of Lil T into the letter. Second, the district court found that Talley had motivation to threaten Moore. Talley had a logical, though unlawful, interest in wanting Moore punished for acting as a government informant. In making this determination, the district court did not credit Talley's testimony to the contrary. Finally, the letter called to a drug dealer's attention the identity of a government informant. The act of telling a drug dealer the identity of a government informant also weighed in favor of finding that Talley intended the letter to be a threat. After reviewing the entire record, we are not left with the definite or firm conviction that the district court made a mistake in its factual findings.

Additionally, Talley argues that because he sent the letter to a third party and it was not received by the witness, it could not have been a threat within the meaning of the Guidelines. This argument questions the district court's determination that the facts justify an obstruction-of-justice enhancement. Because this determination applies the law to the facts, it will be reviewed with appropriate deference. *See Buford*, 532 U.S. at 66 (explaining the requirement of deference due to

a district court's application of the Guidelines to the facts). This circuit has yet to consider whether making threatening statements to a third party can constitute a threat within the meaning of U.S.S.G. § 3C1.1 cmt. n.4. Talley suggests that it should not, a position similar to that taken by the Fourth Circuit. *United States v. Brooks*, 957 F.2d 1138, 1149-50 (4th Cir. 1992).

We decline to adopt this logic. *Brooks*, which states that at a minimum § 3C1.1 requires a direct threat to a witness or a threat issued in circumstances in which the witness will likely learn of it, is an outlier among the circuits that have considered the issue. *See United States v. Searcy*, 316 F.3d 550, 552-53 (5th Cir. 2002) (per curiam) (collecting cases). We find the reasoning of the majority of our sister circuits more persuasive. For example, the Ninth Circuit addressed this issue in *United States v. Jackson,* 974 F.2d 104 (9th Cir. 1992). In that case, the defendant wrote in large letters "The 'Rat' Fred Pittman," and below that wrote "'Snitch'" on a copy of the cooperation agreement given to him by his attorney. *Id.* at 105. The defendant had this modified version of the agreement delivered to his sister, a minister, and to Pittman's mother. *Id.* Copies of the document were then circulated at a Portland nightclub. *Id*. The Ninth Circuit concluded that this conduct was sufficient to uphold the district court's obstruction-of-justice sentencing enhancement. *Id.* at 106. The court explained, "[w]here a defendant's statements can be reasonably construed as a threat, even if they are not made directly to the threatened person, the defendant has obstructed justice." *Id.* (citing *United States v. Shoulberg,* 895 F.2d 882, 885-86 (2d Cir. 1990)). This reasoning better reflects the plain language of Application Note 4(A) to U.S.S.G. § 3C1.1 that provides for an enhancement when defendants attempt to indirectly threaten a witness. *See also Stinson v. United States,* 508 U.S. 36, 38 (1993) (holding that commentary in the Guidelines Manual that explains a

8

guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with that guideline).

Because we are persuaded by the above reasoning, we agree with the district court and find that statements, even when made to a third party, which are appropriately determined to be threatening can, and in this case do, constitute obstruction of justice. Consequently, the district court did not err in finding that Talley obstructed justice.

### B.  Application Note 4 to U.S.S.G. § 3E1.1

Talley's next two arguments focus on Application Note 4 to U.S.S.G. § 3E1.1.  Talley's second argument is that his case is analogous to the extraordinary cases which applied adjustments for both §§ 3C1.1 and 3E1.1.  A district court's determination that a case is "extraordinary" in this manner is a question of law that we review de novo.  *United States v. Gregory*, 315 F.3d 637, 640 (6th Cir. 2003).  "Sixth Circuit law interpreting this provision has consistently granted district courts great leeway when making this determination."  *Id.* (citations omitted).  In evaluating this type of situation, we consider the defendant's truthful admission of the charged offense, the defendant's voluntary assistance to the authorities in resolving the offense, and the timeliness of the defendant's conduct in affirmatively accepting responsibility for his actions.  *United States v. Jeross*, 521 F.3d 562, 582 (6th Cir. 2008) (citing *Gregory*, 315 F.3d at 640-41), *cert. denied*, *Jeross v. United States*, 129 S. Ct. 1311 (2009).  Our evaluation often focuses on when the defendant's truthful admission occurred relative to other events in the trial.  *See id.* (finding that Jeross engaged in obstructive conduct after his guilty plea); s*ee also United States v. Angel,* 355 F.3d 462, 478 (6th Cir. 2004) (noting the significance of the time when the plea occurred relative to when the obstructive conduct

9

occurred). The defendant has the burden of proving the extraordinary nature of his or her case. *Angel*, 355 F.3d at 477.

Even considering the issue de novo, we conclude that Talley's conduct does not satisfy the exacting standard set forth in *Gregory*, and, indeed, this case is easily distinguishable from *Gregory*. First, Gregory's obstructive conduct predated his indictment and plea agreement. *Gregory*, 315 F.3d at 640-41. Talley cannot cite any similar finding in this case. Second, Gregory aided the police, *id.*, whereas Talley attempted to aid another criminal. We recognize the significant leeway granted to the district court, and find it did not err in its determination that Talley did not accept responsibility.

Talley's final argument is that the district court erred by failing to consider the exception. This court has stated that the "district court's decision to deny . . . an acceptance of responsibility reduction is entitled to great deference on review. We review for clear error." *United States v. Genschow,* 645 F.3d 803, 813 (6th Cir. 2011) (citations omitted). For the reasons explained above, we do not consider this to be an extraordinary case. Therefore, the district court did not err in refusing to grant an acceptance-of-responsibility reduction. To the extent that the district court failed to consider the extraordinary exception, the error was harmless because this is an ordinary case.

## CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.